IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES WALTER WERBY,            No. 2:18-cv-01828-HZ

           Plaintiff,            OPINION & ORDER

     v.

COLLETTE PETERS, BRIGITTE
AMSBERRY, RYAN LEGORE, SINA
VAAFUSUAGA, LIZA EMORY,
VINCENT JACKSON, JUSTIN
MCLOUTH, SCOTT BROWN, KEVIN
STOCKTON, TIMOTHY HART, G.
CLARK, CADEN POWELL,
MATTHEW ALLEN, D. MANEY, and
J. HOLTZ,

           Defendants.

Alex Hostetler
14320 SW Cherryhill Drive
Beaverton, OR 97008

Alexander Meggitt
P.O. Box 5248
Portland, OR 97208

     Attorneys for Plaintiff

1 – OPINION & ORDER

Michael R. Washington
OREGON DEPARTMENT OF JUSTICE
Trial Division
1162 Court Street NE
Salem, OR 97301

    Attorney for Defendants

HERNÁNDEZ, District Judge:

    Plaintiff James Walter Werby brings this § 1983 suit against Defendants Collette Peters, Brigitte Amsberry, G. Clark, Liza Emory, Ryan LeGore, Sina Vaafusuaga, Vincent Jackson, Justin McLouth, Scott Brown, Kevin Stockton, Timothy Hart, Caden Powell, Matthew Allen, D. Maney, and J. Holtz. Defendants move for summary judgment arguing: (1) Plaintiff cannot establish an Eighth Amendment violation against Defendants LeGore, Vaafusuaga, Brown, Allen, Stockton, Hart, McLouth, Powell, Jackson, Maney, and Holtz; and (2) Defendants Peters, Amsberry, Emory, and Clark ("the Supervisory Defendants") cannot be held liable under a theory of *respondeat superior*. For the reasons that follow, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

    This case involves two separate incidents of secondary exposure after OC/CS spray was used to extract an inmate from his cell in the Disciplinary Segregation Unit ("DSU") at Eastern Oregon Correctional Institution ("EOCI"). The first incident took place on March 10, 2018. Defendants LeGore, Brown, Jackson, Hart, McLouth, and Stockton were all assigned to the DSU at EOCI when the extraction took place. Brown Decl. ¶ 5; LeGore Decl. ¶ 5; McLouth Decl. ¶ 5; Jackson Decl. ¶ 5; Stockton Decl. ¶ 5; Hart Decl. ¶ 5. The ventilation system in the DSU cannot be turned off during the deployment of OC spray. LeGore Decl. ¶ 6. The contaminated cell was located across the hall and more than ten feet down from Plaintiff's cell. *Id.* at ¶ 7. After the

extraction, several inmates asked Defendant Brown for showers due to their secondary exposure to the spray. Brown Decl. ¶ 9. Instead of providing showers, Defendants Brown and Jackson decided to offer inmates who requested a shower extra towels to help with decontamination. *Id.* According to Defendant Brown, none of the inmates sought medical treatment or exhibited symptoms of being adversely impacted by the spray. *Id.* at ¶¶ 9–10.

Plaintiff testified that shortly after deployment, the OC/CS spray began coming into his cell through the vent and the door. Haile Decl. Ex. 12 (Werby Dep.) 12:13-13:11, 18:22-19:4. In a video of the incident, inmates can be heard coughing, complaining of discomfort, and yelling at officers to "turn the vents off" soon after the spray is deployed. Haile Decl. Ex. 24 (Video 1). Plaintiff testified that he began coughing and gagging and experienced burning in his eyes and trouble breathing due to the spray. Haile Decl. Ex. 12 (Werby Dep.) 15:18, 20:6-7. His attempts at decontamination in his cell did not offer more than temporary relief. *Id.* at 22:22-23:25, 27:15-22. Plaintiff testified that he asked for a shower, new bedding, and a change of clothes from Defendant Brown. *Id.* at 26:9-27:9. Defendant Brown told Plaintiff that he conveyed Plaintiff's concerns to Defendant LeGore, who denied Plaintiff's request. *Id.* Plaintiff continued to feel the effects of the spray until he received his regularly scheduled shower the next evening. *Id.* at 27:18-22. Plaintiff testified that the day after the incident, the nurse who made rounds on the tier was covering his mouth and nose with toilet paper. *Id.* at 39:4-9.

The next day, Plaintiff was seen by health services and reported shortness of breath. DiGiulio Decl. ¶ 6. Plaintiff has a known history of asthma, and his medical records note that he is not to have OC spray used on him. *Id.* at ¶ 7. He was advised the effects would dissipate and offered yard time for fresh air. *Id.* at Att. 1 at 15. Plaintiff also sent a kyte to health services, complaining of symptoms related to secondary exposure to chemical agents and asking for

3 – OPINION & ORDER

treatment of his sore threat. *Id.* at ¶ 8, Att. 1 at 35. Defendant Maney responded after it was received on March 12, notifying Plaintiff that the common side effects of his exposure were transient. *Id.* at Att. 1 at 35.

The second extraction took place on March 13, 2018. Defendants Vaafusuaga, Allen, Powell, and Brown were all assigned to the DSU that evening. Vaafusuaga Decl. ¶ 5; Brown Decl. ¶ 6; Allen Decl. ¶ 5; Powell Decl. ¶ 5. Again, the ventilation system could not be turned off during the deployment of the OC spray. Allen Decl. ¶ 6. The extraction team administered a significant amount of OC/CS spray in three prolonged bursts into the cell, causing officers to slip on the chemical agent that coated the floor. Brown Decl. Att. 3 at 14 (Captain Stewart noticing that the spray bursts were "far beyond" normal). The contaminated cell was located across the hall and more than ten feet down the tier from Plaintiff. *Id.* at ¶ 8. After this incident, inmates who were indirectly exposed were again offered towels, but none were offered showers. Brown Decl. ¶ 9.

Plaintiff again experienced the effects of the spray. Haile Decl. Ex. 12 (Werby Dep.) 34:21-25. Video from the incident captures inmates yelling at officers to turn off the vents, Haile Decl. Ex. 24 (Video 2), and officers coughing during a debrief despite having worn protective gear, Haile Decl. Ex. 24 (Video 3). Plaintiff testified that he asked Officer Powell for help. Haile Decl. Ex. 12 (Werby Dep.) 34:3-4. Specifically, he sought clothing, bedding, a shower, and medical attention. *Id.* at 36:2-9. Defendant Powell said he would inform Defendant Brown of Plaintiff's request, but Plaintiff did not see or hear from Defendant Powell again. *Id.* at 36:2-21. Plaintiff testified that the day after the incident, the nurse who made rounds on the tier was coughing and sneezing. Haile Decl. Ex. 12 (Werby Dep.) 39:10-14.

The next day, Plaintiff sent a kyte to health services complaining of secondary exposure and the contaminated nearby cell. Holtz Decl. Att. 2 at 1. On March 15, 2018, Defendant Holtz—a registered nurse—received and responded to Plaintiff's kyte, informing Plaintiff the cell had been cleaned and recommending that he contact health services if his symptoms persisted. *Id.* Plaintiff also signed up to be seen at the Segregation Clinic the day after his exposure, but the clinic was cancelled. DiGiulio Decl. ¶ 6. His appointment was rescheduled for the next day, when he was seen for a lump on his jaw. *Id.* He did not complain of secondary exposure. *Id.*

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff brings his claims under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Defendants move for summary judgment on Plaintiff's Eighth Amendment claim against Defendants LeGore, Jackson, Brown, Hart, McLouth, Stockton, Vaafusuaga, Powell, Allen, Holtz, and Maney, and on Plaintiff's supervisory liability claims against Defendants Peters, Amsberry, Emory, and Clark (the "Supervisory Defendants"). The Court addresses each claim in turn.

///

///

I.      **Deliberate Indifference**

Plaintiff alleges that Defendants LeGore, Jackson, Brown, Hart, McLouth, Stockton, Vaafusuaga, Powell, Allen, Holtz, and Maney were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  A prison official violates an inmate's Eighth Amendment rights if they are "deliberately indifferent" to the inmate's "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). Thus, to establish an Eighth Amendment claim, Plaintiff must show: (1) that he had a "serious medical need" and (2) that Defendants were deliberately indifferent to that need. *Id.* at 104. "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain[.]" *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (internal quotations omitted)

Deliberate indifference may be satisfied by showing: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Jett*, 439 F.3d at 1096 (quoting *McGuckin*, 974 F.2d at 1059). For Plaintiff to succeed, he must show Defendants acted with more than "[m]ere negligence." *Clement*, 298 F.3d at 904 (citing *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.

1998)). Rather, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Id.*

Turning first to the March 10 incident, there is a dispute of fact as to whether Defendants LeGore, Jackson, Brown, Hart, McLouth, and Stockton were deliberately indifferent to Plaintiff's medical needs. Defendants submit some evidence to suggest that they did not interact with Plaintiff after the extraction was complete and that Plaintiff did not ask them for further decontamination. McLouth Decl. ¶ 8; Stockton Decl. ¶ 7; Hart Decl. ¶ 7. But Defendants Jackson, McLouth, Brown, Stockton, and Hart were all part of the extraction team on the tier, Brown Decl. Att. 2 at 6, and all would have been on notice of the inmates' secondary exposure because they could have heard the inmates coughing and pleading for the vents to be shut off, Hail Decl. Ex. 24 (Video 1). Plaintiff also testified that he sought a shower from Defendant Brown, who relayed to Plaintiff that he had notified Defendant LeGore of his request. Haile Decl. Ex. 12 (Werby Dep.) 26:9-27:9. Defendant LeGore denied the request for further decontamination. *Id.* Defendant Brown also testified that several inmates requested decontamination. Brown Decl. ¶ 9; Haile Decl. Ex. 16 at 70:12-14. And Defendants Jackson and LeGore admitted that they knew inmates were complaining of exposure and requesting showers. Jackson Decl. ¶ 7, Haile Decl. Ex. 17 (LeGore Dep.) 23:3-5 (recalling reports that inmates were complaining of medical concerns). In sum, a reasonable jury could conclude that Defendants LeGore, Jackson, Brown, Hart, McLouth, and Stockton were aware of Plaintiff's risk of harm and yet failed to provide Plaintiff with adequate decontamination in the period following the deployment of chemical agents. *See Clement*, 298 F.3d at 905 ("In this case, the prisoners may be able to show that the defendants were subjectively aware of the risk of serious injury when

they denied showers and medical attention for the inmates for the 4-hour period."). Accordingly, Defendants may be liable for deliberate indifference.

Like the March 10 incident, there is a dispute of fact as to whether Defendants Vaafusuaga, Allen, Powell, and Brown were deliberately indifferent to Plaintiff's needs by failing to offer him decontamination after the deployment of OC/CS spray on March 13. Defendants Allen, Vaafusuaga, and Powell state they have no recollection of Plaintiff asking them for a shower. Allen Decl. ¶ 8; Powell Decl. ¶ 7; Vaafusuaga Decl. ¶ 8. But, again, these Defendants were part of the extraction team on the tier that evening. Brown Decl. Att. 3 at 6. The extraction team administered such a significant amount of OC/CS spray that they were slipping on the floor of the contaminated cell. *Id.* at 14. Officers can be heard coughing during the debrief after the extraction despite having worn protective gear, Haile Decl. Ex. 24 (Video 3), and Defendant Powell states that he may have been coughing when he was on the tier that evening, Powell Decl. at ¶ 8. Plaintiff testified that he asked for help and for decontamination. Haile Decl. Ex. 12 (Werby Dep.) at 35:7-8, 36:2-21. Viewing these facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendants Vaafusuaga, Allen, Powell, and Brown were subjectively aware of the risk of serious harm to Plaintiff but were indifferent to his medical needs in failing to offer him decontamination.

Defendants also emphasize the competing concerns faced by Defendants that evening in assembling and participating in the extraction team. Def. Mot. 17. But whether these concerns are relevant to Defendants' subjective intent is for the jury to decide, particularly as the extraction was complete many hours before Plaintiff was given his regularly-scheduled shower and before Plaintiff requested decontamination. *Clement*, 298 F.3d at 905 (finding that the plaintiffs might "be able to show that the defendants were subjectively aware of the risk of

9 – OPINION & ORDER

serious injury when they denied showers and medical attention for the inmates for the 4-hour period"). Because a reasonable jury could conclude that Defendants knew of the risk of harm to Plaintiff and yet delayed decontamination, they may be liable for deliberate indifference.[1]

As to Defendants Maney and Holtz, however, Defendants are entitled to summary judgment. Defendants Maney and Holtz are registered nurses at EOCI. Defendant Maney responded to Plaintiff's March 11, 2018 kyte complaining of secondary exposure to chemical agents and seeking treatment for his sore throat and cough. DiGiulio Decl. Att. 1 at 35. But Plaintiff was also seen that day by medical services and offered additional yard time and fresh air. *Id.* at 15. Plaintiff provides no evidence or argument as to what additional action Defendant Maney could have taken to remedy Plaintiff's injury. Nor does he present evidence that Defendant Maney's response caused Plaintiff's injury. Similarly, Defendant Holtz responded to Plaintiff's March 14, 2018 kyte, in which Plaintiff complains of past symptoms and the failure of EOCI officials to clean the contaminated cell. Haile Decl. Ex. 4 at 1. In his response, Defendant Holtz informed Plaintiff that the cell had been cleaned and asked Plaintiff to let them know if his symptoms persisted. *Id.* Again, Plaintiff cites no evidence that the alleged indifference caused injury, and there is no evidence or argument as to what steps Defendant Maney could have taken to remedy Plaintiff's injury or prevent further harm. Thus, a reasonable jury could not conclude Defendants Holtz and Maney were deliberately indifferent to Plaintiff's serious medical needs, and Defendants Holtz and Maney are dismissed from this case.

///

---

[1] Defendants also argue that they are entitled to qualified immunity on this claim, arguing Plaintiff has not demonstrated that Defendants violated Plaintiff's Eighth Amendment rights. Def. Mot. 19. Because this argument is duplicative of the Court's analysis regarding the merits of Plaintiff's Eighth Amendment claim, the Court declines to address it separately.

10 – OPINION & ORDER

## II. Supervisory Liability

"[F]or a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citing *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987)) (emphasis added). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)). Thus, "'[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). In addition, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446–47 (9th Cir. 1991) (internal citations and quotations omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

Turning first to Defendants Emory and Clark, Plaintiff cites no evidence and makes no argument in support of his claims against these Defendants. Other than the initial authorization for the use of chemical agents, they were not personally involved in extractions on the evenings of March 10 and 13. LeGore Decl. ¶ 5; Vaafusuaga Decl. ¶ 5. Accordingly, Defendants Emory and Clark are dismissed from this case.

Second, the evidence does not demonstrate that Defendant Peters is liable. Defendant Peters has policymaking responsibilities related to the safekeeping of prisoners, Pl. Resp. 40 (citing Or. Rev. Stat. § 423.075(5)(d)), and she admitted that she had knowledge of both formal and informal complaints from inmates that officers took too long to provide showers to inmates who had been directly exposed to chemical agents, Haile Decl. Ex. 7 (RFA 4, 5). Defendant Peters was also a named defendant in 2015 prisoner civil rights cases alleging improper decontamination after direct exposure to OC spray. *See Walsh v. Peters*, 2:15-cv-01012-MO. But even viewing the facts in the light most favorable to Plaintiff, knowledge of inadequate decontamination after direct exposure does not establish that Defendant Peters was on notice that ODOC procedures, policies, or training for decontamination after secondary exposure were inadequate or unconstitutional. *See Clement*, 298 F.3d at 905 (where inmates recited "numerous instances of the use of pepper spray that allegedly harmed uninvolved bystander inmates" the court concluded that a factfinder could find that policymakers were on "actual or constructive notice of the need to train" (quotations omitted)).

Finally, Defendants are also entitled to summary judgment on the claim against Defendant Amsberry. Plaintiff cites evidence that Defendant Amsberry believed that prison policy did not require a shower for inmates who were indirectly exposed to chemical agents. Haile Decl. Ex. 8 (Response to Interrogatory 2). But there is no evidence in the record as to the

responsibilities or authority of Defendant Amsberry in her role as the superintendent of EOCI. Without this evidence, no reasonable jury could find that her actions, inactions, or acquiescence to a policy could be the moving force behind Plaintiff's injury. Accordingly, the claim against Defendant Amsberry is dismissed.

## CONCLUSION

The Court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment [66]. Defendants Peters, Amsberry, Maney, Holtz, Clark, and Emory are dismissed from this case.

IT IS SO ORDERED.

DATED:___March 29, 2021_____.

*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States District Judge